UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GABRIEL ECKARD,

                        Plaintiff,

          v.

PATRICIA THOMAS,

                        Defendant.

Case No. C19-431 JCC-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND BACKGROUND

This is a 42 U.S.C. § 1983 prisoner civil rights action. Plaintiff is a pretrial detainee at the Snohomish County Jail (the "Jail") who alleges he was subjected to an unreasonable strip search for contraband at the direction of Snohomish County Sheriff Sergeant Patricia Thomas. (Dkt. # 5.) Currently before the Court is Defendant's motion for summary judgment. (Dkt. # 11.) Plaintiff opposes the motion. (Dkt. ## 15-16.) Having considered the parties' submissions, the governing law, and the balance of the record, the Court recommends that Defendant's motion for summary judgment (dkt. # 11) be GRANTED and that this action be DISMISSED with prejudice.

## II.    BACKGROUND

On September 4, 2018, Plaintiff was released from Washington State Department of Corrections ("DOC") custody at the Monroe Correctional Complex ("MCC") and transferred to the Jail, where he is detained pending charges of persistent prison misbehavior and harassment/threats to kill during his incarceration at MCC. (Dkt. # 12 (Enns Decl.), Ex. A (Snohomish County Jail Booking Card); (Dkt. # 16 (Eckard Decl.) at ¶ 1.) Defendant Patricia Thomas learned of the charges against Plaintiff in fall 2018. (Dkt. # 13 (Thomas Decl.) at ¶¶ 1-2.)

Defendant asserts that the Plaintiff's threatening behavior continued following his transfer to the Jail. (*Id*.) For example, on December 11, 2018, Defendant claims that Plaintiff loudly yelled at her, "I'll see you when I get out Patricia!" and "I'll have a gun Patricia." (Dkt. # 13 (Thomas Decl.), Ex. A (12/11/18 Incident Report).) The incident report states Plaintiff also yelled, "I'll be glad to put a bullet in your head Patricia!" and "Bitch!" (*Id*.)

In addition to threatening Defendant directly, Plaintiff has threatened other medical personnel, corrections deputies, and Classification Specialists at the Jail. In October 2018, Plaintiff threatened to kill a nurse who was providing his medication. (Dkt. # 12, Ex. B (10/19/18 Incident Report).) He also offered to show a female sergeant his penis on several occasions, after asking how tight her vagina was. (*Id*., Ex. C (10/30/18 Incident Report).) The incident report states that when Plaintiff was rebuffed, he stated, "I am going to come to your house you fat cunt and I am going to ram my dick up your ass and rape you then I am going to bring a 45 and blow a big hole in you!" (*Id*.) In November and December 2018, Plaintiff threatened to kill a Classification Specialist, along with his family and everyone in the Classification Unit. (*Id*., Exs. D-E (11/1/18 and 12/15/18 Incident Reports).) In December 2018, Plaintiff threatened to kill a

1    sergeant who came to check on Plaintiff after he smeared feces all over his cell door and urinated

2    under the door into the common area. (*Id.*, Ex. F (12/30/18 Incident Report).) Similarly, in

3    December 2018 and January 2019, Plaintiff threatened to kill several corrections officers and

4    sergeants as soon as he was released from the Jail by either shooting, strangling, or cutting their

5    throats. (*Id.*, Exs. G-J (12/31/18 and 1/15/19 Incident Reports).)[1]

6        On February 1, 2019, Corrections Deputy Garka informed Defendant Thomas that he had

7    found a small piece of metallic contraband in a cell he was cleaning that had been previously

8    assigned to Plaintiff since early January 2019. (Dkt. # 13 (Thomas Decl.) at ¶ 3.) Specifically,

9    Deputy Garka stated that Plaintiff had recently been moved to a different module, and "no other

10   inmate besides Mr. Eckard occupied the cell prior to me beginning to clean it." (Dkt. # 19 (Garka

11   Decl.) at ¶ 2.) Moreover, Plaintiff did not share the cell with any other inmate. (Dkt. # 18 (Supp.

12   Thomas Decl.) at ¶2.) Plaintiff asserts that the metal object was "likely" a staple or paperclip,

13   which security guards have allowed him to retain on some occasions. (Dkt. # 16 (Eckard Decl.)

14   at ¶¶ 3-4 (conceding that it "may have been possible that the alleged object may have come from

15   me.").)

16       Deputy Garka asserts that he found "a small, approximately 1.5 inch long piece of metal"

17   (rather than a staple or paperclip) while gathering the hygiene items from the ADA railing in

18   Plaintiff's former cell, which he turned over to Defendant Thomas. (Dkt. # 19 (Garka Decl.) at ¶

19   2; Dkt. 19, Ex. A (2/1/19 Incident Report).) Defendant Thomas asserts that "based on my

20   training and years of experience working at the Jail, this type of metal contraband can easily be

21

22   _____

     [1] Plaintiff's assertion that he has never threatened any employees of the Jail, and "any allegations of such
     are not supported by corroborating evidence," is unpersuasive in light of the numerous Incident Reports

23   filed by Jail staff since Plaintiff's arrival. The Court can also take judicial notice of the video evidence
     filed in *Eckard v. Lee*, 2:19-cv-00429-RAJ-MLP (Dkt. # 12), which clearly depicts Plaintiff threatening
     Jail staff. Courts routinely take judicial notice of documents filed on public court dockets under Rule
     201(b). *See Porter v. Ollison*, 620 F.3d 952, 954-55 n.1 (9th Cir. 2010).

fashioned into a weapon and/or interfere with security mechanisms, thus presenting a safety and security risk to Mr. Eckard, other inmates, and Jail staff." (Dkt. # 18 (Suppl. Thomas Decl.) at ¶ 1.) When Plaintiff was shown the metal contraband, he told Defendant it looked like the prong in a cord to plug into the wall. (*Id*., Ex. B (Thomas Supplemental Incident Report dated 4/5/19).)

Shortly after the metal object was discovered, Plaintiff was taken to the booking area, where he submitted to a body scan by a Rapiscan x-ray scanner as well as a Body Orifice Security Scanner ("BOSS" or "BOSS Chair") metal detector. (*Id*. at ¶¶ 6-8.) After the Rapiscan scanner and BOSS chair both failed to reveal metallic contraband, Plaintiff was directed to submit to a strip search for additional contraband. (*Id*. at ¶ 9.) Defendant asserts that this additional search was conducted to ensure that no additional contraband was concealed on Plaintiff's person, and to preserve the safety and security of Plaintiff, the other inmates, and the jail staff. (Dkt. # 13 (Thomas Decl.) at ¶ 4.)

The booking area has a strip search room with three concrete walls and an opening in the fourth wall with a curtain. (*Id*. at ¶ 5.) Although Defendant Thomas' first declaration states that protocol typically dictates that a single male deputy is present during the strip search, Defendant Thomas' Supplemental Incident Report dated April 5, 2019 states that "a strip search was conducted by CD Williams #6161 with LT Moll #6068 as the second observer resulting in negative findings." (Dkt. # 18, Ex. B (Thomas Supplemental Incident Report dated 4/5/19).) Thus, it appears that two deputies were present during Plaintiff's strip search. The strip search involves the inmate removing his clothing, lifting up his genitals, bending over and coughing. (Dkt. # 13 (Thomas Decl.) at ¶ 5.) There is no physical contact between the deputy and the inmate during the search. (*Id*.) After this additional search revealed no contraband, Plaintiff was transported back to his cell. (*Id*.)

REPORT AND RECOMMENDATION - 4

1     Sergeant Michael Ball, who was on duty on February 2, 2019, investigated the source of

2    the contraband, which "sounded like the ground prong in a three-prong electrical cord" based

3    upon Defendant Thomas' description. (Dkt. # 20 (Ball Decl.) at ¶ 2.) Although Defendant

4    Thomas had inadvertently tossed the contraband into a shred-it box because it had been taped to

5    a yellow sticky note, Sgt. Ball retrieved it. (*Id.*) He also went to the "4N module and found the

6    computer cart in the 4N office where inmates do their pro se legal work. I found that the ground

7    prong was missing from the electrical cord for the computer cart." (*Id.* at ¶ 3.) Sgt. Ball was

8    informed by Classification that Plaintiff was last scheduled with the cart on January 29, 2019,

9    only a few days before Deputy Garka's discovery of the prong in Plaintiff's former cell. (*Id.*)

10   Sgt. Ball photographed the electrical cord and missing ground piece, and completed an Incident

11   Report describing his search. (Dkt. # 20, Ex. A (noting that when Plaintiff was "shown the object

12   he did not hesitate to identify it as a 'prong' for a cord used to plug into something but did not

13   claim to know anything about it.").)

14       A photograph of the object submitted by Defendant confirms that it is not a paperclip or

15   staple, but appears to be the grounding prong of an electrical plug. (Dkt. # 20, Ex. A (photograph

16   of the metallic contraband).) Defendant asserts that "when contraband such as the one at issue is

17   found in an inmate's cell, that inmate is subject to additional searches, including strip searches . .

18   . [A] strip search is warranted after that inmate is scanned by the Rapiscan scanner and Boss

19   metal detector because the Rapiscan scanner does not always detect contraband on a person, in

20   part because it only scans the outside of the body, and the Boss metal detector cannot detect non-

21   metallic contraband." (Dkt. # 18 (Supp. Thomas Decl.) at ¶ 3.)

22       Plaintiff initiated this lawsuit on March 28, 2019. In his verified complaint, Plaintiff

23   asserts that Defendant Thomas ordered him to be subject to an unreasonable search for metallic

1    contraband after the two scans had already proven that he did not have metallic contraband

2    concealed on his person. (Dkt. # 5 at 3.) Plaintiff does not dispute Defendant's description of the

3    search that was performed in him, or allege that the manner of the search was unlawful. (*See*

4    *generally* Dkt. ## 15-16.)  His sole contention is to the fact that he was subjected to a strip search

5    at all violated his rights under the Fourth Amendment to the U.S. Constitution. (*Id.*)

6        Specifically, Plaintiff contends that "after two scans had revealed that I was not secretly

7    [concealing] contraband, there was no reasonable suspicion that I was concealing contraband in a

8    bodily orifice to justify a strip search. Additionally, I fail to draw a connection between the

9    finding of a metal object and reasonable suspicion of secreting non-metallic contraband." (Dkt. #

10   16 (Eckard Decl.) at ¶ 10.) Finally, Plaintiff points out that he was recently found to have

11   paperclips in his cell but was not subjected to a strip search, which he claims demonstrates that

12   the prior search was unreasonable. (*Id.* at ¶12.)  Plaintiff seeks declaratory and injunctive relief,

13   as well as one million dollars in compensatory damages and one million dollars in punitive

14   damages. (Dkt. # 5 at 4.)[2]

15       Defendant moves for summary judgment, arguing that there is no genuine issue of

16   material fact and Plaintiff cannot show his constitutional rights were violated by the strip search.

17   (Dkt. # 11.) Specifically, Defendant asserts that there is no evidence the strip search was

18   conducted with intent to punish him, but rather conducted in response to the present and ongoing

19   security threat he posed to Jail staff and other inmates due to the discovery of metallic

20   contraband in his former cell as well as his pattern of threatening to kill Jail personnel. (*Id.* at 4.)

21

22

23

---

[2] Plaintiff provided evidence with his complaint suggesting that he properly exhausted this claim by
completing the grievance procedure at the jail. Defendant has not argued otherwise.

REPORT AND RECOMMENDATION - 6

1

2

### III.    DISCUSSION

#### A.    Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

1

**B.      Section 1983 Standard**

2      In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that

3  he suffered a violation of rights protected by the Constitution or created by federal statute, and

4  (ii) that the violation was proximately caused by a person acting under color of state law. *See*

5  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is

6  satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

7  another's affirmative act, or omitted to perform an act which he was legally required to do that

8  caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981)

9  (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). A defendant cannot be held

10  liable under § 1983 solely on the basis of the individual's supervisory responsibility or position.

11  *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691-94 (1978).

12

**C.      Fourth Amendment Claim**

13      The Fourth Amendment guarantees people the right to be free from unreasonable

14  searches. U.S. Const. amend. IV. "The overriding function of the Fourth Amendment is to

15  protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v.*

16  *California*, 384 U.S. 757, 767 (1966). "[T]he Fourth Amendment's proper function is to

17  constrain, not against all intrusions as such, but against intrusions which are not justified in the

18  circumstances, or which are made in an improper manner." *Id.* at 768. "The touchstone of the

19  Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by

20  assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on

21  the other, the degree to which it is needed for the promotion of legitimate governmental

22  interests.'" *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v.*

23  *Houghton,* 526 U.S. 295, 300 (1999)).

1    Plaintiff's interests as a pretrial detainee are generally governed by the Supreme Court's

2    decision in *Bell v. Wolfish*, 441 U.S. 520 (1979). In *Bell*, the Supreme Court held that a pretrial

3    detainee "may not be punished prior to an adjudication of guilt in accordance with due process of

4    law." *Id.* at 535. While the Due Process Clause protects pretrial detainees from punishment, not

5    every disability imposed during pretrial detention constitutes "punishment" in the constitutional

6    sense. *Bell*, 441 U.S. at 537. The Supreme Court has recognized that "maintaining institutional

7    security and preserving internal order and discipline are essential goals that may require

8    limitation or retraction of the retained constitutional rights of both convicted prisoners and

9    pretrial detainees." *Id.* at 546. The Supreme Court has further recognized that prison

10    administrators "should be accorded wide-ranging deference in the adoption and execution of

11    policies and practices that in their judgment are needed to preserve internal order and discipline

12    and to maintain institutional security." *Id.* at 547.

13    Pretrial detainees retain some Fourth Amendment rights after being confined to a

14    corrections facility. *Bell,* 441 U.S. at 558; *Michenfelder v. Sumner,* 860 F.2d 328, 332 (9th Cir.

15    1988) (Fourth Amendment right against unreasonable search "extends to incarcerated prisoners;

16    however, the reasonableness of a particular search is determined by reference to the prison

17    context."). When determining the reasonableness of a search, a case-by-case "balancing of the

18    need for the particular search against the invasion of personal rights that the search entails,"

19    courts consider the following factors: (1) "the scope of the particular intrusion," (2) "the manner

20    in which it is conducted," (3) "the justification for initiating it," and (4) "the place in which it is

21    conducted." *Byrd v. Maricopa Cnty. Sheriff's Dep't,* 629 F.3d 1135, 1141 (9th Cir. 2011)

22    (quoting *Bell,* 441 U.S. at 559).

23

1

2

### D.    No Genuine Issue of Material Fact Precludes Summary Judgment on Plaintiff's Fourth Amendment Claim

3

#### 1.    *Justification for the Strip Search*

4

As noted above, Plaintiff concedes that the small metal object found in his former cell

5

(which he asserts was likely a staple or paperclip) may have belonged to him due to the high

6

volume of legal mail that he receives in connection with his numerous court cases. (Dkt. # 15 at

7

1-2.) However, Plaintiff argues that "most security guards have no concern about Plaintiff

8

possessing staples. This is likely because he has no history of aggressive behavior. Plaintiff has

9

never assaulted or attempted to assault any person in the jail." (*Id*. at 2.) Plaintiff argues that,

10

because he was no longer residing in the cell at the time the metal object was found, has never

11

threatened or physically assaulted anyone, or been discovered possessing contraband, the

12

resulting strip search was not reasonable. (*Id*. at 4.)  Plaintiff alleges that the Rapiscan scanner

13

and BOSS chair would have revealed any metallic contraband, and therefore "the strip search

14

was not necessary for the protection of staff and other inmates[.]" (*Id*. at 7.)

15

Defendant contends that the strip search of Plaintiff was reasonable, and did not amount

16

to punishment, because it was justified by the threat Plaintiff posed to himself, deputies, and

17

other inmates at the Jail following the discovery of contraband in his cell. (Dkt. # 11 at 7.)

18

Defendant asserts that "such contraband constitutes a safety threat. When contraband such as this

19

is found in an inmates' cell, that inmate is subject to additional searches, including strip searches,

20

to protect the safety of him or her, other inmates, and Jail staff." (Dkt. # 13 at ¶ 3.)

21

The Court agrees that ample justification existed for the visual body cavity search in this

22

case, even though no metallic contraband was detected by the Rapiscan scanner or BOSS chair.

23

The numerous Incident Reports in the record describe Plaintiff's extensive record of aggressive,

vulgar, and threatening behavior since his arrival at the Jail, and as discussed above, Plaintiff is

1     presently at the Jail to face charges for threatening to kill correctional personnel at MCC. (*Id.*)

2     These considerations, coupled with the undisputed fact that a metal grounding prong (that could

3     be fashioned into a weapon or interfere with safety mechanisms) was found in Plaintiff's former

4     cell, justified Defendant's concern that Plaintiff may also be in possession of other dangerous

5     contraband.

6          Defendant has provided sufficient evidence that although Rapiscan scanner and BOSS

7     chair did not reveal additional metallic contraband, it was reasonable to require Plaintiff to

8     submit to a strip search to confirm that Plaintiff was not hiding other contraband that these

9     devices would not reveal. (*See* Dkt. # 18 (Supp. Thomas Decl.) at ¶ 3 ("[A] strip search is

10     warranted after that inmate is scanned by the Rapiscan scanner and Boss metal detector because

11     the Rapiscan scanner does not always detect contraband on a person, in part because it only

12     scans the outside of the body, and the Boss metal detector cannot detect non-metallic

13     contraband.").) This issue touches directly on the security of the facility and prison officials are

14     entitled to deference in this context. *Turner v. Safley,* 482 U.S. 78 (1987).

15          2.     *Scope of the Search*

16          The search at issue was a strip search of a pretrial detainee, which the U.S. Supreme

17     Court has upheld in situations where the search is "designed to uncover contraband that can go

18     undetected by a patdown, metal detector, and other less invasive searches." *Florence v. Board of*

19     *Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 334 (2012) (no Fourth Amendment

20     violation where pretrial detainee was required in part to pass through metal detector and then

21     "lift his genitals, turn around, and cough in a squatting position" prior to admission into the

22     correctional facility). In the prison environment, the legitimate expectation of bodily privacy,

23

1    even from officers of the opposite sex, is extremely limited. *Bell,* 441 U.S. at 537; *Jordan v.*

2    *Gardner,* 986 F.2d 1521, 1524 (9th Cir. 1993).

3         Here, although Plaintiff argues that he should be excused from violating prison rules

4    because he was not strip-searched on other occasions when Jail personnel discovered that he

5    possessed metal staples in his cell, this reasoning is not persuasive. (*See* Dkt. # 18 (Supp.

6    Thomas Decl.) at ¶ 4 (providing that "Mr. Eckard is not permitted to have staples or paperclips in

7    his cell because of his classification status.").) Where Plaintiff chose to violate prison rules by

8    concealing metallic contraband in his cell, a strip search to insure he had no other contraband

9    hidden on his person (metallic or otherwise) furthers legitimate penological goals. *See Turner,*

10   482 U.S. at 89.

11              *3.    Place and Manner in Which the Search was Conducted*

12        As discussed in detail above, the strip search was performed after the Rapiscan scanner

13   and BOSS chair did not reveal any additional metallic contraband. Defendant Thomas'

14   supplemental incident report states that two deputies were present during the strip search. (Dkt. #

15   18, Ex. A (Supplemental Incident Report dated 4/5/19).) Although Defendant Thomas'

16   Supplemental Incident Report appears to conflict with her first declaration, which stated that

17   "one male deputy stood at the curtain while the strip search was performed" and "no other

18   deputies, including myself, were present in the strip search room," Plaintiff has not argued (or

19   cited any authority establishing) that the presence of two male deputies during the strip search

20   violated his rights in any way. (Dkt. # 13 (Thomas Decl.) at ¶ 5.) Indeed, Plaintiff does not claim

21   that the place of the search, or the manner in which the search was conducted, violated his

22   constitutional rights. His sole contention, which the Court rejected above, is that there was

23

1  insufficient justification for the strip search given his past behavior and the circumstances in

2  which the contraband was discovered.

3          Accordingly, the Court finds that Defendant has demonstrated that the strip search of

4  Plaintiff was reasonable and implemented in an effort to maintain institutional security. Plaintiff

5  has presented no evidence, apart from his conclusory assertion that there was insufficient

6  justification for the strip search, that rebuts any of the evidence submitted by Defendant. Such

7  conclusory assertions are insufficient to create a genuine issue of material fact to preclude

8  summary judgment. *See Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003)

9  (nonmoving party cannot defeat summary judgment with "unsupported conjecture of conclusory

10 statements"). Defendant's motion for summary judgment (dkt.# 11) should therefore be

11 GRANTED, and it is unnecessary to address Defendant's alternative argument that she is entitled

12 to qualified immunity.

13         Defendant asks the Court to find that dismissal of this action constitutes a "strike" under

14 the PLRA's "three strikes" rule, based upon the numerous lawsuits Plaintiff has filed recently.

15 (Dkt. # 20 at 6-7.) However, Defendant fails to explain how Plaintiff's claim in this particular

16 lawsuit was frivolous enough to warrant a strike. *See Washington v. L.A. Cnty. Sheriff's Dep't*,

17 833 F.3d 1048, 1051 (9th Cir. 2016) ("A prisoner can incur a 'strike' [under 28 U.S.C. §

18 1915(g)] for bringing an action 'that was dismissed on the grounds that it is frivolous, malicious,

19 or fails to state a claim upon which relief may be granted.'"). Although the Court finds that

20 Plaintiff's Fourth Amendment claim cannot survive summary judgment, it is not so frivolous as

21 to qualify as a "strike" under the PLRA.

22

23

REPORT AND RECOMMENDATION - 13

1

## IV.    CONCLUSION

2
3
4

The Court recommends that Defendant's motion for summary judgment (dkt. # 11) be GRANTED and this matter be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

5
6
7
8
9
10
11
12

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

13
14

The Clerk is directed to send copies of this order to the parties and to the Honorable John C. Coughenour.

15

Dated this 9th day of August, 2019.

16
17
18

MICHELLE L. PETERSON
United States Magistrate Judge

19
20
21
22
23